APR 0 2 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH: ) | |
| ) | **19 - 0 9 11 ADC** |
| **Storage Unit H1504 of Extra Space** ) | |
| **Storage, 8000 Telegraph Road,** ) | |
| **Unit H1504, Severn, Maryland 21144** ) | |

### AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

I, James D. Norton, a Task Force Officer with the Drug Enforcement Administration (the

"DEA"), being duly sworn, depose and state that:

1.      Your Affiant makes this Affidavit in support of an application under Federal Rule

of Criminal Procedure 41 for a warrant, authorizing the search of Storage Unit H1504 of Extra

Space Storage, 8000 Telegraph Road, Severn, Maryland 21144, and rented by Lawrence Michael

Branch ("**BRANCH**") (hereinafter referred to as the "**STORAGE UNIT**"), for the items specified

in Attachment B and the seizure of those items.

2.      Your Affiant submits that probable cause exists to believe that (1) **BRANCH** is

engaging in drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846; and

(2) the **STORAGE UNIT** contains fruits, evidence, and instrumentalities of drug trafficking

activities.

### Affiant's Background

3.      Your Affiant is an investigative or law enforcement officer of the United States

within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is

empowered by law to conduct investigations of, and make arrests for, offenses enumerated in 18

U.S.C. § 2516.

4.      Since November 2013, your Affiant has been a Task Force Officer with the DEA,

assigned to the DEA High Intensity Drug Trafficking Areas Group 43. Your Affiant also works



at the Calvert County (Maryland) Sheriff's Office ("CCSO") Drug Enforcement Unit ("DEU") for over ten years, rising to the level of Detective over five years ago.

5.      As a DEA Task Force Officer, your Affiant has participated in numerous drug investigations, several of which were Organized Crime Drug Enforcement Task Force investigations.  During these investigations, your Affiant has performed duties associated with electronic surveillance including, but not limited to, serving as the lead case agent, monitoring consensual telephone calls, conducting physical and pole camera surveillance, listened to hundreds of court-authorized intercepted calls between individuals involved or suspected to be involved in drug trafficking activities, reviewing court-authorized intercepted text messages, interpreting the court-authorized intercepted calls and texts, and transcribing those calls.  In addition, your Affiant has worked directly with confidential sources and informants to conduct controlled drug purchases; has debriefed them; and has interviewed drug dealers and users about their lifestyle, appearance, and habits.  Moreover, your Affiant has applied for search warrants, arrest warrants, and Title III wire intercepts; executed search warrants; and seized evidence related to drug trafficking, including substantial quantities of narcotics and drug paraphernalia.

6.      As a Detective with the CCSO DEU, your Affiant has investigated narcotics trafficking, firearms trafficking, and overdose related deaths.  During those investigations, your Affiant has served as an affiant of search warrants and for which their execution led to the seizure of firearms, narcotics, drug paraphernalia, and documents relating to the distribution of narcotics as well has arrested those who violated state gun and drug laws and the state of Maryland successfully prosecuted.

7.      Your Affiant also received specialized training in drug importation, manufacture, concealment, and distribution; drug recognition and interdiction; crime scene investigations;

2



evidence collection; gang investigations; interviews and interrogation; and cellular telephone forensics and analysis. Your Affiant earned an Associate in Arts in Criminal Justice from the College of Southern Maryland in La Plata, Maryland.

8.     Based on your Affiant's training, knowledge, and experience, your Affiant has become familiar with the following: (1) the manner in which drug traffickers (a) transport, store, and distribute drugs as well as (b) collect, keep, and conceal the proceeds of their illegal activities; and (2) the ways in which drug traffickers use cellular telephones, cellular telephone technology, coded communications or slang during conversations, and other means to facilitate their illegal activities and thwart law enforcement investigations.

9.     Specifically, based on your Affiant's training, knowledge, and experience, your Affiant learned that persons involved in illegal drug distribution commonly do the following:

   a.     Maintain a supply of illegal drugs, items used in the manufacturing, packaging, and transportation of illegal drugs, packing materials, scales, other drug paraphernalia, and owe sheets in their residences, storage units, and vehicles.

   b.     Conceal contraband related to such illicit activities—such as scales, razors, packaging materials, cutting agents, cooking utensils, microwave ovens, pots, dishes, and other containers—in locations where they can readily access them, such as their residences, their vehicles, storage units, the residences of their friends, family members, and associates, or their drug distribution locations, such as a stash house or a safe house.

   c.     Maintain keys to safe deposit box, books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of illegal controlled substances. Dealers in illegal controlled substances maintain the aforementioned enumerated items where they have ready access to them, such as in secured locations within their residence, storage units, the residences of their friends, family members, and associates, or their drug distribution locations. Moreover, drug traffickers commonly maintain such items on cellular telephones, computers, computer diskettes, optical disks, thumb drives, laptop computers, personal tablets, and other personal electronic devices.

3



d.     Conceal in their vehicles, their storage units, their residences or the residences of their friends, family members and associates, their drug distribution locations, or other places over which they maintain dominion and control large quantities of United States currency, financial instruments, precious metals, jewelry, and other items of value. The United States currency are typically drug proceeds while drug traffickers typically use such proceeds to purchase financial instruments, precious metals, jewelry, and other items of value.

e.     Indicia of occupancy, residency and/or ownership of the property to be searched are often present in such property.

### Basis of Information

10.     The facts set forth in this Affidavit are based upon (a) your Affiant's personal knowledge; (b) review of evidence developed through surveillance and obtained from this investigation; (c) communications with others who have personal knowledge of the events and circumstances described herein, as well as (e) information that your Affiant gained through training and experience. Because your Affiant submits this Affidavit for the limited purpose of establishing probable cause for the requested complaint and warrants, he has not included every detail of this investigation. Instead, your Affiant has included in this Affidavit only those facts that are sufficient to support a probable cause finding for the issuance of the requested complaint and warrants.

### Probable Cause

11.     In October 2017, the DEA and the CCSO DEU began investigating heroin traffickers operating in the Anne Arundel County area. Among the targets of this investigation is **BRANCH**.

12.     The intercepted calls and texts occurring over the cellular telephone assigned call number **(410)   212-8980** with International Mobile Subscriber Identity ("IMSI") 310120153606409, subscribed to John Wright, the subscriber address of 2406 Autumn Harvest

4



Court Odenton, Maryland 21113, and used by Watson Patrick BRUCE a/k/a Tree ("**BRUCE**"), whose service provider is Sprint Corporation ("SPRINT") (hereinafter referred to as "**Target Telephone 1**") and the cellular telephone number **(443) 804-0072** with IMSI 310120227102162, subscribed to no name listed, the subscriber address is not listed, and used by **Larry Michael BROWN** ("**BROWN**"), whose service provider is SPRINT (hereinafter referred to as "**Target Telephone 2**") confirmed that **BROWN** supplies **BRANCH** with narcotics.

13.    Some of the pertinent intercepted conversations and the surveillance in support of those conversations revealing that **BROWN** supplies **BRANCH** with narcotics are summarized as follows:

a.    On January 4, 2019, at approximately 6:09 p.m., **BROWN**, via **Target Telephone 2**, placed an outgoing call to **BRANCH**, via **BRANCH**'s cell phone.  Here is an excerpt of their discussion:

> **BRANCH**: Yo. **BROWN**: Yeah I just got your text, look you know I normally go to the club on Fridays so. **BRANCH**: You said what? **BROWN**: You know I normally go out to the club on Fridays, I normally get to the club bout, bout 7. **BRANCH**: So what time you leave then? **BROWN**: Where are you? **BRANCH**: Man I'm in, yo I'm in Annapolis, I'm goin to pick my kids up now, I need to pick my kids up and I need to pick my uh girl up by 7:30, that's why I said I'll call you as soon as this traffic die down. **BROWN**: Ok, I don't get out there until about 11. **BRANCH**: Ok. **BROWN**: Right. So I was tryin, so like that's why I was tryin to catch you early, you know. **BRANCH**: I know, I know, I just had so much goin on, I can explain it better to you face to face, but I had more than what you think goin on this mornin. I didn't get to lay down til late and then had to get them to school, the fuckin car broke so she had to take my car and all that. It was just a fuckin hassle man. **BROWN**: Right. **BRANCH**: I just had, I had the worst fuckin mornin ever and I ain't even get all my sleep that I needed so I'm out this mother fucker runnin around tired as shit. **BROWN**: what if I met you at the Chick-Fil-A at 7, could you do it then? **BRANCH**: Yeah I could prolly, yeah I could make that, I make that. Alright I think I could make that.

5

> **BROWN**: Right, if I make it to your Chick-Fil-A at 7 then that will give me a chance to make it to my club by 7:30. **BRANCH**: Alright bet, say no more. Ima try to make it there by 7. **BROWN**: Ok, yeah try to make it there like uh, try to make the Chick-Fil-A by 7 then we good. Ok? **BRANCH**: Alright um, yeah whatever you could do that'd be great yo, like uh. **BROWN**: Ok now whatever you want. **BRANCH**: Just so I ain't gotta. **BROWN**: Whatever you got, just bring that. **BRANCH**: I'm, I told, I told you I'm, I'm, I'm at mix, I'm in the um, I'm in the middle of you know what, so I didn't really have it tryin to pay the bills and all that, that, that was my reason for even sayin something from the beginning, but uh. **BROWN**: Ok well if you got, well just bring something, right. **BRANCH**: Yeah. **BROWN**: But it's not a problem because I can help you either way, ok? **BRANCH**: Alright bet. Ima see what I can do. **BROWN**: Ok. Alright so like I'll, I'll see you at your Chick-Fil-A at 7. **BRANCH**: Alright. **BROWN**: Ok major.

Based on investigators' training, knowledge, and experience, they believe that, in vague, coded language, (1) **BROWN** and **BRANCH** arranged a meeting for **BRANCH** to purchase heroin from **BROWN**; (2) **BRANCH** asked **BROWN** to provide him with heroin on consignment when **BRANCH** said "whatever you could do that'd be great yo;" (3) **BROWN** reassured **BRANCH** that he was willing to provide **BRANCH** with heroin on consignment when he said "well just bring something, right. it's not a problem because I can help you either way;" and (4) **BROWN** and **BRANCH** ultimately agreed to meet at a Chick-Fil-A. Indeed, investigators observed **BROWN** arrive in **BROWN's Vehicle** at the Chick-Fil-A located at 7831 Quarterfield Park Drive, Severn, Maryland 21144 at approximately 7:01 p.m., and **BRANCH** park a 2019 black GMC Terrain registered to Hertz Vehicles of Baltimore located at 7416 New Ridge Road Hanover, Maryland 21076 (hereinafter referred to as "**BRANCH's rental car 1**") next to the 2011 silver Honda Crosstour bearing Maryland license plate number 2CE5468 registered to **BROWN** ("**BROWN's Vehicle**") at approximately 7:10 p.m. Shortly after, investigators observed **BRANCH** go in and out of **BRANCH's rental car 1** and **BROWN's Vehicle**.



b.      On February 28, 2019, at approximately 5:00 pm, **BROWN**, via **Target Telephone 2**, placed an outgoing call to **BRANCH**, via **BRANCH**'s cell phone.  Here is their conversation:

> **BRANCH**: Hello. **BROWN**: Hey, what (UI).... **BRANCH**: What's up?  What's going on?  How you doing? **BROWN**: What are you asleep? **BRANCH**: Yeah, ready to get up and get myself together.  What's going on? **BROWN**: Yeah, I called you earlier.  **BRANCH**: Man, I was asleep man. **BROWN**: I seen that. **BRANCH**: Yeah, I was asleep, what's going on though? **BROWN**: Well, uh, you know, uh, so uh, I got that Vodka for you.  Like the Gray Goose. **BRANCH**: Oh yeah. **BROWN**: Yeah. **BRANCH**: Alright (UI)....are you off tomorrow right? **BROWN**: Yeah. **BRANCH**: Alright, I, I'll give you a call tomorrow. **BROWN**: OK. **BRANCH**: I got some shit, I got some shit to do this evening so I'll give you a call tomorrow. **BROWN**: OK. **BRANCH**: Alright. **BROWN**: No problem.  Later.

Based on investigators' training, knowledge, and experience, they (1) know that the phrase "gray goose" is street language for heroin; and (2) believe that in vague, coded language, **BRANCH** and **BROWN** arrange a meeting during which **BRANCH** would purchase heroin from **BROWN**.

14.     On March 14, 2019, Honorable Stephanie A. Gallagher signed, inter alia, the Criminal Complaint and arrest warrant for **BRANCH**, charging him with conspiracy to distribute and possess with the intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. 846; possession with intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. 841(a)(1); and use of communication facilities to facilitate the commission of such offenses, in violation of 21 U.S.C. 843(b).

15.     On March 15, 2019, at approximately 8:20 a.m., investigators conducted surveillance of 515 Kingdom Court, Odenton, Maryland 21113, as fully described in Attachment A-4 ("**Target Location 4**") and observed Branch leave **Target Location 4** in the 2019 silver Chevrolet Equinox bearing Maryland license plate number 5DR6266 registered to Hertz Vehicles



BWI, P.O. Box 8612, Baltimore, Maryland 21240 ("**BRANCH's rental car 2**").   Law enforcement in an unmarked vehicle followed **BRANCH,** who began driving **BRANCH's rental car 2** at high speeds through back roads.   Shortly after, a patrol officer in an unmarked patrol vehicle activated the emergency lights and attempted to make a stop **BRANCH's rental car 2,** but **BRANCH** continuing driving and tossed what appeared to be small baggies out of **BRANCH's rental car 2**'s window.   **BRANCH** subsequently stopped **BRANCH's rental car 2,** but when the patrol officer exited the patrol officer's vehicle, **BRANCH** resumed driving slowly **BRANCH's rental car 2** and yelled that he was going to stop on main road.   That patrol officer then observed **BRANCH** dumping a white powdery substance out of **BRANCH's rental car 2**'s window, causing it to fall down onto the patrol officer's vehicle and **BRANCH's rental car 2**.

16.   Law enforcement arrested **BRANCH** after he stopped at the intersection of Najoles Road and Benfield Boulevard in Hanover, Maryland.

17.   The officers searched **BRANCH's rental car 2**, and they recovered a receipt for payment on the **STORAGE UNIT** from the center console..   During this wiretap investigation, investigators discovered that **BRANCH** rented the **STORAGE UNIT**.

18.   Law enforcement field tested the white powdery substance that **BRANCH** dumped out of the window, and it field tested positive for heroin.

### Conclusion

19.   Based on the information set forth in this Affidavit, your Affiant submits that probable cause exists to believe that (1) **BRANCH** is engaging in drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846; and (2) the **STORAGE UNIT** contains fruits, evidence, and instrumentalities of drug trafficking activities.

20.   Accordingly, your Affiant requests that this Court issue a search and seizure

8

**19 - 0 9 1 1  ADC**

warrant authorizing the search of the **STORAGE UNIT**, as fully described in Attachment A, for

the items listed in Attachment B, which constitute evidence, fruits, and instrumentalities of drug

trafficking activities in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, and the seizure of the

items listed in Attachment B.

James D. Norton
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn before me this _15_ day of March, 2019.

Honorable A. David Copperthite
United States Magistrate Judge



**19 - 0 9 1 1   ADC**

## Attachment A: the STORAGE UNIT

The property to be searched is described as follows:  Storage Unit H1504 of Extra Space Storage, 8000 Telegraph Road, Severn, Maryland 21144, and rented by Lawrence Michael Branch ("**STORAGE UNIT**").

19 - 0 9 1 1   ADC

## Attachment B:  Items to be Seized From the STORAGE UNIT

This warrant authorizes the search and seizure of all records and items relating to violations

of 21 U.S.C. §§ 841 (a)(1), 843(b), 846, by Lawrence Michael Branch and his known and unknown

co-conspirators, including, but not limited to, the following:

1.    Controlled substances.

2.    Drug paraphernalia, including, but not limited to, scales, plastic bags, drug wrappers, chemical test kits, metal pressing devices used for compressing cocaine, heroin, and other controlled substances.

3.    Documents, books, and papers, reflecting names, addresses and/or telephone numbers of co-conspirators, customers, and suppliers.

4.    Photographs, in particular, photographs of co-conspirators, controlled substances, sums of money, vehicles, jewelry, and/or assets.

5.    Books, records, receipts, notes, ledgers, diaries, journals, designated codes and other papers relating to the purchase, importation, transportation, manufacture, sale, and distribution of controlled substances.

6.    Currency, bank statements and records, other financial statements, money drafts, letters of credit, money orders and cashier checks, passbooks, bank checks, credit card statements, employment or payment records, loan applications and records, real estate records, real estate rental agreements, property deeds, vehicle titles, money wires and transfers, stocks, bonds, precious metals, jewelry, and any other items evidencing the obtaining, secreting, transfer, and concealment of assets and expenditure of money.

7.    Indicia of occupancy and ownership of the **STORAGE UNIT**, including but not limited to, correspondence and photographs.

8.    Safe deposit box keys, safe deposit box documents, storage unit documents, safe combinations, storage unit keys, records and agreements for payment, and other documents and items evidencing the obtaining, secreting, holding, transfer, and/or concealment of controlled substances.

9.    Cellular telephones, pagers, beepers, or other electronic communications devices.

10.    Documents or other records relating to court proceedings involving other co-conspirators, including, but not limited to, charging documents and bail records.

11.    Records of travel including, but not limited to, tickets, boarding passes, transportation schedules, passports, visas, notes, motel and hotel receipts, and other receipts related

19 - 0 9 1 1  ADC

to travel.

13.    Locked or closed containers, boxes, receptacles that contain any of the items listed in Nos. 1 – 12 of this attachment.

14.    Locked or unlocked safes, boxes, suitcases, cabinets, or other secure storage containers (and law enforcement officers may drill the same).

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (*e.g.*, hard disks or other media that can store data); any handmade form (*e.g.*, writing); any mechanical form (*e.g.*, printing or typing); and any photographic form (*e.g.*, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).